**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RICHARD PATRICK,

               *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant.*

_____/

CASE NO. 2:19-cv-11355

DISTRICT JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 12. 13)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support Defendant Commissioner of Social Security's determination that Plaintiff Richard Patrick is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 12), be **GRANTED**, the Commissioner's Motion, (ECF No. 13), be **DENIED**, and the case be remanded to the Commissioner for an award of benefits.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and Supplemental Income Security Benefits (SSI). (ECF No. 3.) The case

1

is before the Court upon the parties' cross-motions for summary judgment. (ECF Nos. 12, 13.)

Plaintiff filed applications for DIB and SSI benefits on May 23, 2013, alleging that his disability began on February 11, 2013. (ECF No. 9, PageID.220, 229.) The Commissioner denied the claim. (*Id.* at PageID.136, 137.) Plaintiff then requested a hearing before an ALJ, which was held on February 6, 2015. (*Id.* at PageID.81-110.) The ALJ issued a decision on March 2, 2015, finding Plaintiff not disabled during the relevant period. (*Id.* at PageID.62-75.) On December 4, 2015, the Appeals Council denied review, (ECF No. 9, PageID.43-46). Plaintiff filed for judicial review and successfully earned a remand to the Commissioner on March 1, 2017. (*Id*. at 711-714.) This remand was consolidated with Plaintiff's subsequent applications filed on January 8, 2016, amending the onset date to February 5, 2013. (*Id*. at Page.ID.900, 904.) A hearing was held on February 1, 2018 before ALJ Melissa Warner (ECF No. 9, PageID.606-653.) The ALJ issued a decision on April 6, 2018, finding Plaintiff not disabled during the relevant time period. (ECF No.9, PageID.574-596.) Plaintiff filed for judicial review of the final decision on May 8, 2019. (ECF No. 1). He then filed the instant Motion for Summary Judgment on September 19, 2019, (ECF No. 12), the Commissioner countered with its own Motion on October 11, 2019, (ECF No. 13), and Plaintiff responded to the Commissioner's motion. (ECF No. 14.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to

2

determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to

be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or

her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No.9, PageID.596.) At step one, the ALJ found that Plaintiff met the insured status requirements through March 31, 2017, and that he had not engaged in substantial gainful activity since his amended alleged onset date of February 5, 2013. (ECF No.9, PageID.580.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, posttraumatic stress disorder (PTSD), mild intellectual disability, and polysubstance abuse. (ECF No.9, PageID.580.) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (ECF No.9, PageID. 580-584.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> A full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes, or scaffolds; and no exposure to obvious hazards. The claimant can also: understand, carry out and remember simple instructions where the work is not fast paced, meaning the pace of productivity is not dictated by an external source over which the

claimant has no control such as an assembly line or conveyor belt; make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is very repetitive from day to day with few and expected changes; and respond appropriately to occasional contact with supervisory personnel, rare (meaning less that occasional but not completely precluded) contact with coworkers where there is no working in team or tandem with coworkers, and no contact with the general public.

(ECF No.9, PageID.584-594.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (ECF No.9, PageID.594.) At step five, the ALJ found that Plaintiff could perform a limited range of work and that jobs existed in significant numbers in the national economy that Plaintiff could perform. (ECF No.9, PageID.595.) This finding relied on the testimony of the Vocational Expert (VE) about the industrial cleaner position, DOT code number 381.687-014, landscape laborer position, DOT code number 408.687-014, and laundry worker position, DOT code number 361.687-018. (ECF No.9, PageID.595.)

### E. Administrative Hearing

#### 1. Plaintiff' and Plaintiff's Case Manager's Testimony

At the hearing held on March 23, 2017, when asked what had changed since the last hearing, Plaintiff testified that "[m]y medication has changed. My mood has been the same." (ECF No. 9, PageID.613.)  Plaintiff clarified that the medication had changed from Depakote to Saphris." (ECF No. 9, PageID.613.) In addition, Plaintiff takes an injection of Haldol once a month. (ECF No. 9, PageID.613-614.) Plaintiff stated that the medications help "somewhat" but that "there's days that I still explode" recalling that the last time he exploded was "about three or four years ago[.]" (ECF No. 9, PageID.615.) When prompted by the ALJ to clarify that despite medication, Plaintiff said he still explodes, the ALJ again

6

asked when the last time was that Plaintiff exploded, Plaintiff responded, "I'd say probably a year ago." (ECF No. 9, PageID.615.) Plaintiff stated he still lives with his girlfriend of sixteen years. (ECF No. 9, PageID.616.) Plaintiff has a driver's license, and even had a CDL until it expired "about a month ago" further explaining that the CDL is renewed every two years. (ECF No. 9, PageID.616-617.) Plaintiff stated that he has a GED because he only finished school through the eleventh grade and that he did not need any special education classes when he was in school. (ECF No. 9, PageID.618.) Plaintiff is able to read a newspaper, but when asked whether he could understand the stories, he responded, "Not really" further explaining that he "can't follow what's going on" and that "[e]ven repeating stuff that I'm told, sometimes I don't say it in the right way." (ECF No. 9, PageID.618-619.) Plaintiff secured his last job as a truck driver and laborer by filling out an application himself. (ECF No. 9, PageID.619-620.) Plaintiff was able to learn how to put in fences and only needed help because the work is "too heavy" to do alone. (ECF No. 9, PageID.620-621.) Plaintiff also worked filling potholes and he was able to use a Bobcat, work with concrete, work on parking lot signs and set up ballards which are the posts placed in front of stores to stop vehicles from hitting the store. (ECF No. 9, PageID.622-623.)

Plaintiff testified that he currently sleeps "Thirteen hours out of the day" which is less than he was in the past (ECF No.9, PageID.628) and that his girlfriend cooks for him because he has had difficulty in the past, for example, he tried boiling eggs, forgot about them, and they blew up. (ECF No. 9, PageID.624-625.) Plaintiff can wash dishes but he sometimes breaks them as he is "clumsy on my meds, you know." (ECF No. 9, PageID.625.) Plaintiff usually makes himself a bologna sandwich for lunch and helps his

girlfriend in the kitchen, including taking care of the trash, but he does not prepare food or cook and seldom shops. (ECF No. 9, PageID.625-626.) Plaintiff only walks around if he does go shopping with his girlfriend because "it would make me frustrated if I couldn't find" whatever he was looking for. (ECF No. 9, PageID.626.) Plaintiff listens to news talk shows on the radio, but he doesn't really remember what the talk was about. (ECF No. 9, PageID.626-627.) Plaintiff needs reminders for "[t]aking a shower, shaving, stuff like that" "[b]ecause I forget." (ECF No. 9, PageID.628.)

Plaintiff further testified that he hears voices "every day" "sometimes" throughout the day and that he does not understand what the voices are saying and that these voices have not changed over time. (ECF No. 9, PageID.629.) Plaintiff also has anger outbursts "Probably once a day" that are triggered by ordinary things "like bills, going grocery shopping" and that "[s]omething usually gets broke. Like I'll through a coffee mug into the floor or something like that." (ECF No. 9, PageID.630.) Plaintiff believes the Haldol is helping with his anger issues since he had not committed any domestic violence since being on the medication. (ECF No. 9, PageID.630.)

When questioned by counsel, Plaintiff testified that he cannot write checks because "I haven't got the slightest idea how you would start it or how much money you'd have to have in the bank to cover." (ECF No. 9, PageID.631.) Plaintiff did not think he had told Dr. Renna that he quit factory work because it was "monotonous" because he did not know what "monotonous" means and he explained that when he told Dr. Renna he stopped doing seal coating because he was tired of it, he was tired of "Just the people in your face, you know what I'm saying, with shovels." (ECF No. 9, PageID.631.) Plaintiff stated that he

8

showers and changes his clothes "once a week" and that he does not leave the house because "Just I think people are going to get me, chase me, I've been in trouble with the law so many times…I've been tased." (ECF No. 9, PageID.632-633.)

Plaintiff does not do laundry because "I don't know how to mix the stuff up" but when asked by the ALJ if he could follow written instructions on how to do it, Plaintiff responded, "It would be hard, but I probably could." (ECF No. 9, PageID.634.)

Plaintiff's case manager, Todd Wright, testified that he has been Plaintiff's case manager for two years and that he sees Plaintiff three to four times a month for 15 to 45 minutes at a time. (ECF No. 9, PageID.635-636.) Mr. Wright stated:

> Well, since coming into treatment, Richard is much better than he was initially. But even with being significantly better, he is quick to anger. Even in a room by himself, he'll be responding and getting himself worked up. And he struggles extremely with poor concentration. As an executive functioning it's really difficult. So he struggles and this really frustrates him where he has a thought of what he needs to do or wants to do, but he can't come up with a plan to initiate the activity to get it done. So that's really frustrating for him. And unfortunately the medications, his baseline is the medications is depressed. So he deal with - - he sleeps a lot, poor concentration, poor motivation, but it's much better than he was before when he was very, very volatile and a string of issues with the law.

(ECF No. 9, PageID.636.) Even though less volatile, Plaintiff is "depressed" lives with "greasy hair" and "disheveled clothes" and "relies a ton on [his girlfriend]." (ECF No. 9, PageID.637.) Mr. Wright stated "I don't know what would become of [Plaintiff] without [his girlfriend] being able to provide the support that she provides." (ECF No. 9, PageID.637.) The ALJ refocused Mr. Wright from opinion to observation, asking how Plaintiff interacts with him. Mr. Wright responded, Plaintiff "[w]hen he gets a bit nervous, he'll say inappropriate things" and be "oblivious" to them. (ECF No. 9, PageID.637-638.)

Mr. Wright testified that Plaintiff "would work if he could work and it really, really frustrated and depressed him" and "cost him" and Mr. Wright opined that "if his symptoms didn't, you know, get to the point where he could no longer work and the frustration with people around him, the flare-ups of the PTSD just became too much for him, I really believe that he would work." (ECF No. 9, PageID.638.) When questioned by counsel, Mr. Wright explained that he has been asocial worker for 25 years and that he is skilled in "psycho education" which attempts to explain patient's symptoms as to how they interfere with daily functioning and how to manage them. (ECF No. 9, PageID.639.)

Mr. Wright also described Plaintiff's 2013 hospitalization when Plaintiff went off his medications unintentionally because he "would get confused and forget when to take them. (ECF No. 9, PageID.640.) Mr. Wright indicated that Plaintiff's greatest problems are "executive functioning and memory" and that the "biggest thing that he struggles with is just that poor concentration…like this morning when I went to pick him and [his girlfriend] up, [his girlfriend] told him to go out to the garage and get her cane and he came back and he didn't have the cane." (ECF No. 9, PageID.641.)

### 2.  The VE's Testimony

The ALJ asked the VE to consider a hypothetical individual with Plaintiff's background

> [who[ can perform the functions of any exertional category work except no
> climbing ladders, ropes, and scaffolds, no exposure to obvious hazards. The
> individual can also understand, carry out, and remember simple instructions
> where the work is not fast paced, meaning no work where the pace or
> productivity is dictated by an external source over which the individual has
> no control, such as an assembly line or conveyor belt, make judgments on
> simple work and respond appropriately to usual work situations and changes

- - one second here - - and changes in a routine work setting that is very repetitive from day to day with few and expected changes, and respond appropriately to occasional contact with supervisor personnel and coworkers, where there's no working in tandem with coworkers and no contact with the general public.

(ECF No.9, PageID.646-647.)

When asked whether such a person could perform Plaintiff's any of past relevant work, the VE indicated that he could perform some but not all of his past work. (ECF No.9, PageID.646.) The VE testified that such a person could perform jobs in the national economy such as the industrial cleaner position, DOT code number 381.687-014 (400,000), landscape laborer position, DOT code number 408.687-014 (180,000), and laundry worker position, DOT code number 361.687-018 (83,000). (ECF No.9, PageID.646.)

When asked to reduce contact with coworkers from occasional to rare, the VE indicated the number of jobs would be reduced to 100,000 industrial cleaners, and 75,000 landscape laborers. (ECF No.9, PageID.646-647.) When asked whether an additional requirement was that reading, writing and math "should not be important for these tasks" would change the number of positions, the VE responded that it would not. (ECF No.9, PageID.647.) The VE also clarified that a person needs to be on task 90% of the time, excluding breaks, and that generally no more than two absences per month would be allowed "and that would include having to leave early or arrive late." (ECF No.9, PageID.647.)

The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (ECF No. 9, PageID.643.)

**F.     Governing Law**

11

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical

---

[1] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir, 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *rep. & rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *rep. & rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to

15

consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.    Arguments and Analysis

Plaintiff makes three arguments in support of his conclusion that substantial evidence does not support the ALJ's decision: (1) "The ALJ erred in assigning no weight to the opinion of Dr. Tejero, Plaintiff's treating psychiatrist"; (1)(a) "Dr. Tejero's opinion is sufficiently based on her own observations and records"; (1)(b) "The ALJ mischaracterizes the record in stating that Plaintiff's primary care provider stated Plaintiff's mental status was normal";  (1)(c) "The record is clear that Plaintiff is not able to live independently"; (1)(d) "The ALJ mischaracterizes the record in stating Plaintiff is able to manage his anger"; (1)(e) "whether Dr. Tejero was inconsistent in her prognosis and how much Plaintiff sleeps"; (2) "The ALJ erred in assigning significant weight to the opinion of Dr. Rinnas"; and (3) "The Appeals Council erred in not marking Dr. Tejero's rebuttal as an exhibit." (ECF No. 12.)

16

### 1. Medical Opinion Evidence

Although divided into subparts, the gist of Plaintiff's argument is that the ALJ improperly gave no weight to the opinion of Dr. Tejero and gave improper and significant weight to the opinion of Dr. Rinnas.

In February 2013, Plaintiff was twice involuntarily hospitalized for psychiatric issues resulting from medication noncompliance and substance abuse. (ECF No.9, PageID.133, 356, 369, 466-467.) During his first hospitalization, it was noted that Plaintiff "is exhibiting aggression, agitated behavior" an that he "sleeps with a crowbar next to his bed and was throwing things, smashing coffee cups…" (ECF No.9, PageID.384.) The second hospitalization occurred "right after discharge, [Plaintiff] did not take his medications, and restarted smoking marijuana that made him paranoid, delusional, and belligerent again." (ECF No.9, PageID.356.) Plaintiff "seemed manic with racing thoughts, flight of ideas, paranoid about his mother" because he had been "sexually inappropriate towards his mother." (ECF No.9, PageID.356.) Plaintiff also "wanted to kill other people. He said, 'I will cut him.' [The doctor] wasn't sure who he was referring to." (ECF No.9, PageID.356.) When the police found him, Plaintiff attempted to flee and kicked one of the officers who caught up with him, resulting in the second hospitalization and several criminal charges. (ECF No.9, PageID.466-467, 356, 462.)

Dr. Rinnas was asked to evaluate Plaintiff for competency to stand trial and criminal responsibility regarding his criminal charges. Dr. Rinnas evaluated Plaintiff, examined his records, and concluded that "although the [Plaintiff] reportedly presented with agitation, mood instability, and sleep disturbance around the time period in question, his mental

disturbance, in this examiner's opinion, does not meet criteria for mental illness as statutorily defined." (ECF No.9, PageID.471.) Dr. Rinnas noted that Plaintiff "tested positive for illicit substances upon both psychiatric admissions [to the hospital], thereby precluding a reliable distinction between mental illness as defined by statute and mental status alteration due to substance abuse" which was especially important since "[v]oluntary intoxication, of course, is a mental state specifically excluded by statute as a basis for legal sanity." (ECF No.9, PageID.472.)

Plaintiff contends that Dr. Rinnas's opinion is of little value since the standards for assessing competency to stand trial and criminal responsibility are very different from those used to determine disability and that Dr. Rinnas did not assess Plaintiff's ability to work. Defendant cites *Stanzione v. Colvin*, 2016 WL 111430, at *6 (D. Vt. Jan 11, 2016) for the proposition that it would have been reversible error for the ALJ to ignore or discount the findings of Dr. Rinnas. However, Defendant overstates the holding of this non-binding decision. The district court noted that the ALJ gave limited weight to the doctors' opinions solely on the grounds that their reports were for the purpose of assessing competency to stand trial rather than work capacity. The court stated that "[t]his is not a good reason, in and of itself, to afford limited weight to the opinions of examining medical consultants[.]" *Id*. This non-binding holding does not require ALJs to rely on competency opinions, nor does it require any specific weight be given them. Most importantly, this non-binding holding dealt with the opposite scenario presented in this case and does not address the instant issue where the ALJ did not ignore but rather relied solely on the opinion of a doctor whose assessment was for purposes of determining competency rather than disability.

Here, the question is whether the ALJ can rely on Dr. Rinnas's opinion to provide substantial evidence for her findings regarding Plaintiff's residual functional capacity and non-disability. I suggest that Dr. Rinnas's opinion cannot provide substantial evidence for the ALJ's findings. Not only was Dr. Rinnas not a treating physician, her opinion was based on entirely different standards than those that apply to determine whether a person is disabled under the social security regulations. Research has not revealed any cases addressing this precise scenario but research has unearthed cases approaching the issue from the opposite direction. Cases have held that a determination of disability under the social security framework does not answer the competency question and does not even create a presumption in favor of incompetency. *Miller v. Minor*, 2015 WL 1345449, at *4 (W.D. Missouri Mar. 23, 2015)(Petitioner's assertion that he qualifies as 'disabled' for the purpose of Social Security benefits is insufficient to show that he was incompetent…[t]he legal standard for competency for the purposes of criminal charges and the legal standard to qualify as a 'disabled person' for the purposes of Social Security benefits are substantially different" thus a "finding of legal disability is not enough to create a presumption of incompetence."); accord, *Flemons v. Kelley*, 2017 WL 7310063, at *7, n. 4 (E.D. Ark. Oct. 30, 2017). In the instant case, if Plaintiff had been found incompetent, I suggest that such a finding would not create any presumption of disability, although it may be relevant. Even worse, here, the ALJ used a finding of competency to virtually create a presumption of non-disability and I suggest that use of the competency finding in this way is unreasonable and cannot provide substantial evidence.

I further find that Dr. Rinnas's opinion and even underlying findings that gave rise

to her opinion, are unable to provide substantial evidence because they are stale. I recognize that "a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F.Supp.3d 464, 470 (W.D. N.Y. 2018). But here, Dr. Rinnas's evaluation and opinion occurred in September 2013, it was for the narrow purpose of determining competency, and it was one snapshot in time. The ALJ's decision was made on April 11, 2018. (ECF No. 9, PageID.596.) I therefore find that it is far less probative and should not be entitled to the controlling weight given to it by the ALJ.[3] Defendant contends that even if Dr. Rinnas did not have the benefit of later medical evidence, the ALJ considered all that evidence and thus, did not err in relying on Dr. Rinnas's opinion. (ECF No. 13, PageID.1686-1688.) While is true that "[t]here is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, 2013 WL 121813, at *6 (S.D. Ohio Jan. 9, 2013). It has also long been true that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

---

[3] Dr. Rinnas was an examining source but if he were a non-examining source, the analysis would have been governed directly by the Sixth Circuit in *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). The Court in *Kepke* held that *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), did not set forth a bright-line rule requiring the ALJ to discount a non-examining source's opinion that was made without benefit of all the record medical evidence. Instead, *Kepke* explained that "before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record." *Kepke*, 636 F. App'x at 632 (quoting *Blakely*, 581 F.3d at 409). There is no indication that the ALJ in the instant case considered the fact that Dr/ Rinnas did not have the benefit of subsequent medical evidence in formulating her opinion. In other words, the medical evidence post-dating Dr. Rinnas's opinion was not viewed under the proper standard as to whether the nearly five years of medical evidence missing from Dr. Rinnas's review should affect the weight given his opinion by the ALJ. It is hard to conceive of how nearly five years of medical evidence could be less than material.

525, 529-30 (6th Cir. 1997). Accordingly, I find that the ALJ's decision to give "significant weight" to the opinion of Dr. Rinnas (ECF No. 9, PageID.590) was in error and cannot provide the substantial evidence needed to support her decision.

The opinion of Dr. Tejero, Plaintiff's treating psychiatrist, was given no weight. Defendant contends that this decision was appropriate because the ALJ properly found her opinion was based on Plaintiff's subjective complaints, was inconsistent with the medical evidence of record, and was largely based on check-the-box and circle-the- answer forms. (ECF No. 13.)  I agree that where a treating source's opinion is patently deficient, that any error in not considering it or granting it weight can be harmless. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" because the check-box opinion was patently deficient); *Bragg v. Comm'r of Soc. Sec.*, No. 11-10579, 2012 WL 1079942, at *10 (E.D. Mich. Jan. 24, 2012) (finding harmless where ALJ failed to explicitly consider patently deficient opinion by physician who "merely checked boxes," provided one-word answers, and "offered no objective evidence on how she came to her conclusions"), *Rep. & Rec. adopted*, 2012 WL 1079925 (E.D. Mich. Mar. 30, 2012).

However, where, as here, Dr. Tejero not only filled out several opinion questionnaires, dated August 2014, December 2015, and April 2016, but also based those ultimate check-the-box conclusions on pages of information gathered and evaluated about Plaintiff, I suggest that such opinions are not patently deficient. In 2014 and 2015, Dr. Tejero completed comprehensive and thorough biopsychological evaluation chronicling

Plaintiff's mental health history, relying not only on Plaintiff's statements but the statements of others who are close to him and past medical and other records. (ECF No. 9, PageID.551-561, 1249-1260.) Only after having completed this evaluation did Dr. Tejero memorialize his functional assessment on a check-box form. (ECF No. 9, PageID.562-565, 1261-1264.) To view the check-box forms apart from the lengthy evaluation that precedes it, is, in my opinion, misleading. Dr. Tejero's 2016 mental health RFC assessment did not follow a biopsychological evaluation as did the others. (ECF No. 9, PageID.1376-1381.) The ALJ gives "no weight" to these opinions because they are "not only inconsistent with his own treatment records, but contradicted by the same." (ECF No. 9, PageID.592.) The first alleged inconsistency is that although Dr. Tejero concluded that without the support of his girlfriend, Plaintiff's prognosis would be extremely poor and he would not be able to live independently, but Dr. Tejero's treatment notes stated that Plaintiff was living with his girlfriend until a decision in his social security case. (ECF No. 9, PageID.592.) I suggest these two statements are not necessarily inconsistent and certainly do not support rejecting years of treatment and evaluation. Plaintiff could simultaneously be dependent on help and yet have a desire to live independently of that needed help. Dr. Tejero did not opine that Plaintiff should live on his own, he only noted what Plaintiff expressed about perhaps changing his living situation if he were to obtain a favorable decision. The second alleged inconsistency cited by the ALJ is that although Dr. Tejero opined that Plaintiff "could have an angry outburst and become physically aggressive in the workplace," "the claimant has not been aggressive in years with the help of medication." (ECF No. 9, PageID.592.) here again there is no direct conflict, Plaintiff has been aggressive in the past and could be in

22

the future. Apparently, the ALJ thinks the likelihood of that happening is significantly less than that anticipated by his treating physician, Dr. Tejero. However, this is a difference in opinion more than an inconsistency. I suggest that the ALJ's disagreement with the treating physician is different from finding inconsistencies between the treating physician's opinion and the medical evidence of record. I further suggest that disagreement with the opinion does not provide a proper reason for completely discounting the opinion.

I therefore suggest that the ALJ erred in completely discounting Dr. Tejero's opinions and that substantial evidence does not support the ALJ's decision.

### 2. **Appeals Council**

Plaintiff argues that the Appeals Council erred in not considering Dr. Tejero and Mr. Wright's letter rebutting the ALJ's decision. (ECF No. 12, PageID.1665.) Defendant contends that this evidence could only be considered under s sentence six remand and that Plaintiff has not shown how viewing this evidence would likely change the outcome of the decision. (ECF No. 13, PageID.1699.) Defendant also argues that this Court cannot consider the Appeals Council's denial of review. (*Id.*)

Defendant is correct, the Appeals Council's decision to deny review is not subject to this Court's review. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). Nor can any evidence considered by the Appeals Council be reviewed by this Court since it has been held that the record is closed at the administrative law judge level such that those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2

23

F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

This court could consider the evidence as it pertains to a potential sentence six remand, but for the reasons indicated below, that extra step is not necessary.

### 3. Remand

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

Where, as here, there is a lengthy history of debilitating mental health issues, a previous remand under sentence four, and strong evidence provided by Plaintiff's treating psychiatrist that Plaintiff is disabled and unable to perform any substantial gainful activity

(ECF No. 9, PageID.551-561, 562-565, 1249-1260, 1376-1381), I suggest that the case be remanded for an award of benefits.

### H.    Conclusion

For these reasons, I conclude that substantial evidence does not support the ALJ's decision. Consequently, I recommend **GRANTING** Plaintiff's Motion, (ECF No. 12), **DENYING** the Commissioner's Motion, (ECF No. 13), and remanding the case for an award of benefits.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 8, 2020                                    S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 8, 2020                                    By s/Kristen Castaneda
                                                        Case Manager